IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PATRICK M. MURRAY,

         Plaintiff,      OPINION AND ORDER

   v.

                  07-c-0379-bbc

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This is an action for judicial review brought pursuant to 42 U.S.C. § 405(g) of a partially adverse decision of the Commissioner of Social Security, making plaintiff Patrick Murray ineligible for either Disability Insurance Benefits or Supplemental Security Income under Titles II and XVI of the Social Security Act, codified at 42 U.S.C. §§ 416(i), 423(d) and 1382c(a). Plaintiff seeks reversal of the commissioner's decision that he was not disabled between August 28, 2002, his alleged onset date, and May 3, 2005. Plaintiff asserts that the administrative law judge failed to consider evidence of his weakness and fatigue, including his testimony and the opinions of the medical expert and his treating physician.

1

I find that the administrative law judge properly considered the opinions of the medical expert and plaintiff's treating physician and rejected them for good reasons supported by substantial evidence in the record.  I also find that the adjudicator's finding that plaintiff's subjective complaints were not credible was supported by substantial evidence and not patently wrong.  Because plaintiff has not challenged any of the administrative law judge's findings regarding his mental impairments, I have not addressed them.  Accordingly, I am denying plaintiff's motion for summary judgment and affirming the administrative law judge's decision.

The following facts regarding plaintiff's physical impairments are drawn from the administrative record (AR):

## RECORD FACTS

### A.  Background and Procedural History

Plaintiff filed applications for Social Security Disability Insurance Benefits and Supplemental Security Income on September 9, 2002, alleging that he suffered from Addison's disease (an adrenal gland disorder) and hepatitis C.  Although he filed his applications in Ohio, plaintiff has been a resident of Platteville, Wisconsin since the filing of this lawsuit.  He has a twelfth grade education and past work experience as a commercial roofer and roofing foreman.  AR 22, 99-100.  After the local disability agency

2

denied his applications initially and upon reconsideration, plaintiff requested a hearing, which was held on November 30, 2004 before Administrative Law Judge Melvin Padilla in Dayton, Ohio.  Plaintiff was represented by counsel.  AR 22.  He was 49 years old on the date of the hearing, making him a "younger person" for the purposes of his applications for disability benefits.  AR 83; 20 C.F.R. §§ 404.1563(c), 416.963(c).  The administrative law judge heard testimony from plaintiff, neutral medical expert Dr. Paul Boyce and neutral vocational expert Charlotta Ewers.  AR 22.  Prior to the issuance of the administrative law judge's written decision on June 24, 2005, plaintiff turned 50, making him a "person closely approaching advanced age" under the regulations.  20 C.F.R. §§ 404.1563(d), 416.963(d).  The administrative law judge found that plaintiff had not been disabled prior to his fiftieth birthday on May 3, 2005 but that he had been disabled at all times since that date.  AR 22.  This decision became the final decision of the commissioner on May 16, 2007, when the Appeals Council denied plaintiff's request for review.  AR 5-7.

## B.  Medical Evidence

### 1.  Treatment

Beginning in April 2002, plaintiff was evaluated and treated by Dr. Rodney Kusumi, an infectious disease specialist in Columbus, Ohio.  AR 162.  Laboratory testing in February and March 2002 had shown that plaintiff had a hepatitis C viral titer level of

850,000. A liver biopsy in May 2002 showed that plaintiff had grade 1 chronic hepatitis C with mild activity and no significant fibrosis in his liver. AR 141-46 and 329-31. In July 2002, plaintiff reported feeling tired, having difficulty walking and experiencing joint pain, stiffness, weakness and swelling. AR 225-27.

In mid August 2002, plaintiff was diagnosed with chronic obstructive pulmonary disease. AR 246-47. Around this time, plaintiff also experienced lightheadedness, dizziness and syncope (blackouts). Plaintiff's primary care physician, Dr. Thomas Santanello, admitted him to the hospital on August 30, 2002. Testing on August 31, 2002 showed that plaintiff had occlusion and stenosis of the carotid artery. AR 147-61, 222-24.

In a September 22, 2002 report, Kusumi noted that he was evaluating plaintiff for possible interferon and ribavirin therapy. Kusumi stated that plaintiff complained of "some systematic symptoms and fatigue that may well be related to his hepatitis." AR 162. Kusumi also noted that plaintiff's primary physician was evaluating him for possible adrenal insufficiency because of his problems with weakness and fatigue. Id. By October 2002, plaintiff's physicians determined that he had a thyroid disorder. AR 163.

On October 22, 2002, Santanello reported that plaintiff's situation had deteriorated and that he continued to have syncopal episodes and extreme fatigue. Santanello noted that plaintiff's providers had attributed these symptoms to his hepatitis C, hyperthyroidism and Addison's disease. He noted that Kusumi was waiting to treat

4

the hepatitis C until plaintiff's symptoms became more stable.  Santanello noted that plaintiff's symptoms prevented him from performing many functions of his job as a construction worker and dramatically affected his ability to carry, lift, bend, walk, stand and handle objects.  Plaintiff reported that he was homebound and unable to drive because of his fatigue.  AR 163, 170-72, 213-18.

On November 12, 2002, plaintiff saw Laszlo Posevitz, who noted that plaintiff's reported symptoms of dizzy spells, shortness of breath, numbness, forgetfulness, fainting, blackouts, musculoskeletal pain, fatigue, depression, difficulty making decisions and sleeping difficulties were not related to his stenosis but could be related to his anxiety, Addison's disease or side effects of his medications.  AR 180-84.  Posevitz performed a right carotid artery endarterectomy for plaintiff's stenosis in mid May 2003.  AR 286-97.

In February and March 2003, plaintiff saw Dr. Paul Glowienka, an endocrinologist, for dizziness, weakness and ringing in his ears.  Glowienka found no endocrine dysfunction.  AR 337-39.  On April 29, 2003, plaintiff saw Kusumi, who discussed the potential side effects of hepatitis treatment.  Plaintiff reported drinking alcohol intermittently but not to an excess.  AR 347.  When Kusumi saw plaintiff again in June 2003, he told plaintiff that he must stop drinking alcohol.  AR 346.

On August 16, 2003, plaintiff broke his feet, heels and ankles after falling 20 feet while climbing a ladder.  AR 303-18.  Dr. Joseph Deccico, an orthopedist, treated

5

plaintiff from August 26, 2003 until August 12, 2004 for his calcaneal fractures, osteoporosis and bilateral degenerative changes in his knees.  AR 302-28.

On December 30, 2003, Dr. Romeo assessed plaintiff's hepatitis C and noted that his liver enzymes were normal and that his liver biopsy showed only mild activity and no fibrosis.  Given these findings, Romeo did not recommend treating the hepatitis.  Plaintiff told Romeo that he drank only one beer a year.  AR 357-63.

In February 2004, plaintiff was evaluated at Samartitan Behavorial Health for his mental health problems and drug and alcohol abuse.  Susan Santanello, plaintiff's sister and the wife of plaintiff's physician, reported that plaintiff continued to drink alcohol to an excess.  Plaintiff denied this, claiming he had only a past history of drug and alcohol abuse. AR 434, 436, 439 and 433.


2.  Residual functional capacity assessments

On June 21, 2004, Santanello completed a physical functional capacity assessment for plaintiff, noting that plaintiff could not care for himself and would not be a candidate for productive employment.  He limited plaintiff to lifting less than five pounds, sitting less than one hour at a time, standing and walking for less than five minutes at a time and never climbing, balancing, stooping, crouching, kneeling or crawling.  Santanello attributed these limitations to plaintiff's bilateral median neuropathy in his distal upper limbs, radiculopathy of his cervical spine, spondylosis, osteoarthritis and the injuries to

plaintiff's feet, ankles and heels.   Santanello noted that plaintiff experiences lightheadedness, vertigo, black out spells and extreme fatigue.   He indicated that plaintiff's fatigue resulted from his pain, pain medications and neuro-pulmonary deterioration.  AR 377-85.

On August 12, 2004, Deccico completed a physical functional capacity assessment for plaintiff, limiting him to lifting no more than five pounds occasionally and two pounds frequently, standing and walking three hours in an eight-hour workday, sitting five hours in an eight-hour workday, occasional stooping and no climbing, balancing, crouching, kneeling, crawling, pushing or pulling.  AR 392-96.


3.  Consulting physician opinions

On November 8, 2002, Dr. Craig Thompson, a state agency consulting physician, completed a physical residual functional capacity assessment for plaintiff, concluding that plaintiff had the following limitations because of weakness in his upper extremities and cervical tenderness:  lift 20 pounds occasionally and 10 pounds frequently and stand and walk at least two hours in an eight-hour workday.   Thompson also recommended that plaintiff avoid hazards and noted that fatigue and syncope can be attributable to hepatitis C, Addison's disease or hyperthyroidism.  AR 174-79.

On May 12, 2003, Dr. Teresita Cruz, a state agency consulting physician, completed a physical residual functional capacity assessment for plaintiff and concluded

7

that he had the following limitations:  lift 20 pounds occasionally and 10 pounds frequently and sit, stand and walk six hours in an eight-hour workday.  She specifically noted that the limitations Santanello found were not supported by objective evidence. AR 269-74.

C.  <u>Hearing Testimony</u>

Plaintiff testified that he experiences daily lightheadedness, dizziness and often feels tired.  He suffers from Addison's disease, hepatitis C, osteoporosis, lung disease, carpal tunnel syndrome and arthritis.  Plaintiff takes a thyroid and pituitary gland medicine, uses an inhaler and a breathing machine, tries to do a recommended four breathing treatments a day and takes advair, zantac and oxycontin.  He does not experience any side effects of these medications.  Plaintiff is not being treated with interferon for hepatitis C because he is afraid that it will not work or it will make him sicker.  Plaintiff testified that although he has poor breathing and suffers shortness of breath with exertion, he still smokes.  AR 463-70, 482.

Plaintiff testified that he changes positions frequently.  He can walk only one block at a time, but he tries to walk to a local park once in a while.  Plaintiff stated that he can stand for five to ten minutes and sit for about a half an hour before having to shift positions.  He cannot climb stairs without a breathing treatment.  He sleeps for two to four hours at a time, is often awake at night and takes several naps a day.  Plaintiff

8

testified that he cares for himself, can lift ten pounds and carry a bag of groceries a short distance, cooks simple meals, washes dishes (although he uses a lot of paper plates), vacuums, grocery shops, makes his bed, visits with people if they come and get him, watches television, fishes, camps, reads and walks daily for exercise. His sister does most of his laundry. Because plaintiff relies on the bus for transportation, he does not participate in as many social activities as he once did. AR 471-82.

Plaintiff testified that he drinks very little alcohol. His friends bring him beer once or twice a week and he drinks three or four beers at a time. Although plaintiff has undergone treatment for alcohol abuse, he testified that he quit drinking in 1998. AR 469-70.

Plaintiff testified that he could not work full time in a sedentary position because of his dizziness, weakness and breathing treatments. On bad days, he lies down in bed and rests all day. He stated that at least 15 out of 30 days in a month are bad days during which he remains in bed. AR 485.

Dr. Boyce, the medical expert, testified that his review of the medical record showed that plaintiff's thyroid condition appears to be under control; there is no evidence of his having been diagnosed with Addison's disease or being treated for it; he has the mildest grade of hepatitis C; he has orthopedic conditions; and he has respiratory difficulties. Boyce noted that weakness and tiredness are consistent with the high hepatitis viral levels in plaintiff's liver. He testified that a person with these above

9

conditions would have the following limitations:  lifting and carrying no more than ten pounds; standing and walking for less than one hour a day; a five-minute sit and stand option every hour; no balancing, climbing ropes, scaffolds or ladders; climbing stairs or ramps no more than three times a day; occasional bending, stooping, crouching and crawling; frequent but no constant twisting and repetitive motions with the hands; and avoid hazards and concentrated exposure to cold, heat, humidity, fumes and gases.  AR 487-95.

On cross examination, Boyce testified that if plaintiff had Addison's disease, he would be on a daily steroid replacement therapy.  Boyce also stated that he did not agree with Thompson's November 2002 assessment that plaintiff's fatigue and syncope (or loss of consciousness) can be attributed to either Addison's disease or hyperthyroidism because plaintiff's thyroid function is normal and there is no evidence that he has Addison's disease.   However, Boyce testified that he possibly could agree with Thompson's statement that plaintiff's fatigue and weakness could be attributable to hepatitis C, given plaintiff's high viral titer.   He stated that he could not explain plaintiff's syncope because it did not improve after he had surgery for his carotid artery disease.  Boyce admitted on cross examination that it was reasonable to expect that plaintiff would have problems maintaining consistent attendance at work given his medical impairments.  AR 496-98.

10

The administrative law judge asked the vocational expert, Ewers, to consider a person of plaintiff's age, education and work experience who can perform sedentary work with the limitations stated by Boyce, that involves low-stress work, simple and repetitive tasks and that has none of the following:  production quotas, contact with drugs or alcohol, dealing with the public, fast-paced work, climbing stairs, unprotected heights or operating hazardous machinery.  According to Ewers, such a person could perform work as a type copy examiner, surveillance system monitor, microfilm document preparer and charge account clerk.  She stated that the further limitations of lifting up to five pounds occasionally and two pounds frequently and standing up to ten minutes at a time for no more than one hour out of an eight-hour workday would not affect the number of jobs identified.  However, Ewers testified that missing three days of work a month or not being able to perform at a consistent pace without an unreasonable number and length of rest periods would preclude competitive employment.  AR 500-04.

### D.  The Administrative Law Judge's Decision

In reaching his conclusion that plaintiff was not disabled, the administrative law judge performed the required five-step sequential analysis.  See 20 C.F.R. §§ 404.1520, 416.920.   The administrative law judge found that plaintiff had not performed substantial gainful activity since August 28, 2002, his alleged onset date (step one); has chronic mild hepatitis C, residuals of bilateral calcaneal fractures, carotid artery disease

11

with associated residuals of an endarterectomy, chronic bronchitis due to smoking, chondromalacia of the knees, depression and alcohol dependence (step two); and did not have an impairment or combination of impairments that met or medically equaled any impairment listed in 20 C.F.R. 404, Subpart P, Appendix 1 (step three).  AR 30-31.

At step four, the administrative law judge assessed plaintiff's residual functional capacity, taking into account plaintiff's subjective complaints regarding his symptoms and limitations, as well as the various medical opinions in the record.  Relying primarily on the testimony of the medical expert, he determined that plaintiff had the residual functional capacity for sedentary work with the following limitations:   standing or walking for less than one hour per day; alternate positions as necessary; occasional bending, stooping, crouching and climbing ramps and stairs; temperature-controlled and clean air environments; low-stress, simple repetitive tasks; and no balancing, climbing ladders, unprotected heights, extreme temperatures, excess humidity, use of hands for constant repetitive motions or twisting, production quotas, contact with the general public or occupational exposure to drugs or alcohol.  AR 39.  The administrative law judge explained that he did not give controlling weight to the opinions of Deccico or Santanello, plaintiff's treating physicians, because Deccico's assessment of plaintiff's limitations was not consistent with his progress notes and Santanello had an obvious conflict of interest because he is plaintiff's brother-in-law.  AR 31-33.

The administrative law judge found that plaintiff's subjective complaints of pain, fatigue and total disability lacked a reasonable medical basis and were not supported by the record.   In support of his conclusion, the administrative law judge noted the following:

- Plaintiff's daily activities of caring for his personal needs; performing the basic household chores of cooking, washing dishes, vacuuming, shopping and making beds; visiting and drinking beer with friends; watching television; reading; fishing; camping; and walking for exercise are consistent with an ability to perform sedentary work.

- Plaintiff's recent treatments involved only periodic and conservative measures not indicative of a total disability.

- Plaintiff's medications and treatments have not resulted in disabling side effects.

AR 35-36.  The administrative law judge also noted that plaintiff minimized his alcohol use in his hearing testimony and to his treating physicians when other evidence showed that he actually was drinking more often.

Relying on the testimony of the vocational expert, the administrative law judge found that plaintiff could not perform his past relevant work because it exceeded the exertional limitations of his residual functional capacity assessment.   AR 36, 39. However, he found that the vocational expert's testimony was sufficient to satisfy the commissioner's burden at step five to show that other jobs existed in significant numbers in the national economy that plaintiff could perform prior to May 3, 2005, namely type copy examiner, surveillance systems monitor, microfilm document preparer and charge

13

account clerk.  Applying 20 C.F.R. 404, Subpart P, Appendix 2, Rule 201.14 (the grids), the administrative law judge found that after plaintiff turned 50 on May 3, 2005, his functional capacity diminished to the extent that he could not have made a vocational adjustment to a limited range of sedentary work that existed in significant numbers in the national economy.  AR 37-40.


OPINION

A.  Standard of Review

The  standard  by  which  a  federal  court  reviews  a  final  decision  by  the commissioner is well settled: the commissioner's findings of fact are "conclusive" so long as  they  are  supported  by  "substantial  evidence."    42  U.S.C.  §  405(g).    Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support  a  conclusion."    Richardson v. Perales,  402  U.S.  389,  401  (1971).    When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, reweigh  the  evidence,  decide  questions  of  credibility  or  otherwise  substitute  its  own judgment for that of the administrative law judge regarding what the outcome should be. Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000).  Thus, where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the commissioner.  Edwards v. Sullivan, 985 F.2d 334, 336 (7th Cir.  1993).    Nevertheless,  the  court  must  conduct  a  "critical  review  of  the  evidence"

14

before affirming the commissioner's decision, <u>id.</u>, and the decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review." <u>Steele v. Barnhart</u>, 290 F.3d 936, 940 (7th Cir. 2002).  When the administrative law judge denies benefits, he must build a logical and accurate bridge from the evidence to his conclusion.  <u>Zurawski v. Halter</u>, 245 F.3d 881, 887 (7th Cir. 2001).

### B.  <u>Analysis</u>

Plaintiff makes a number of arguments in support of his contention that the administrative law judge ignored evidence of his fatigue and weakness and improperly concluded that he could perform a limited range of sedentary work prior to May 3, 2005.

### 1.  <u>Medical expert testimony</u>

Plaintiff argues that although the administrative law judge relied primarily on the testimony of the medical expert, Boyce, he failed to consider Boyce's favorable testimony that plaintiff's high viral load could result in weakness and tiredness and plaintiff might have problems with attendance on a consistent basis.  An administrative law judge must consider and weigh the important evidence of record and at least minimally discuss evidence that contradicts the commissioner's position.  <u>Godbey v. Apfel</u>, 238 F.3d 803, 808 (7th Cir. 2000); <u>Green v. Shalala</u>, 51 F.3d 96, 101 (7th Cir. 1995).  However, he is

not required to provide a written evaluation of every piece of evidence.  Rice v. Barnhart,

384 F.3d 363, 371 (7th Cir. 2004); Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995).

On cross examination, Boyce testified that given plaintiff's high viral titer,

plaintiff's fatigue and weakness could be attributable to hepatitis C and that it was

reasonable to expect that plaintiff would have problems maintaining consistent

attendance at work given his medical impairments.  Boyce did not state an opinion

regarding plaintiff's level of fatigue or weakness or say that these symptoms would

prevent plaintiff from working.  In fact, Boyce stated the opinion that a person in

plaintiff's condition would be able to perform sedentary work with certain limitations.

The administrative law judge was present during this testimony and incorporated all of

Boyce's limitations for plaintiff into his residual functional capacity assessment.  He even

accounted for the effect of plaintiff's symptoms on his concentration by limiting plaintiff

to low-stress, simple and repetitive tasks.  Accordingly, I can track the adjudicator's

reasoning and am satisfied that he properly considered, weighed and discussed the

important evidence.  Green, 51 F.3d at 101.


2.  Treating physician's opinion

Plaintiff contends that the administrative law judge also erred by not considering

the opinion of his treating physician, Kusumi, that his fatigue was related to his hepatitis

C.  "[T]he weight properly to be given to testimony or other evidence of a treating

16

physician depends on circumstances." Hofslien v. Barnhart, 439 F.3d 375, 377 (7th Cir. 2006). When a treating physician's opinion is well supported and no evidence exists to contradict it, the administrative law judge has no basis on which to refuse to accept the opinion. Id.; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). When, however, the record contains well-supported contradictory evidence, the treating physician's opinion "is just one more piece of evidence for the administrative law judge to weigh," taking into consideration the various factors listed in the regulation. Id. These factors include how often the treating physician has examined the claimant, whether the physician is a specialist in the condition claimed to be disabling, how consistent the physician's opinion is with the evidence as a whole, and other factors. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). An administrative law judge must provide "good reasons" for the weight he gives a treating source opinion. Id. He also must base his decision on substantial evidence and not mere speculation. White v. Apfel, 167 F.3d 369, 375 (7th Cir. 1999).

In a September 22, 2002 report, Kusumi noted that he was evaluating plaintiff for possible interferon and ribavirin therapy. Kusumi stated that plaintiff complained of "some systematic symptoms and fatigue that may well be related to his hepatitis." AR 162. Kusumi also noted that plaintiff's primary physician was evaluating him for possible adrenal insufficiency because of his problems with weakness and fatigue. Id. The administrative law judge did not refer to these treatment notes in his written decision, but he did not have to. Rice, 384 F.3d at 371. Contrary to plaintiff's assertion,

17

Kusumi's treatment notes do not establish that plaintiff's weakness and fatigue were caused by his hepatitis C or prevented him from working.   Further, such a conclusion would not be consistent with the record as a whole.   20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

As discussed by the administrative law judge, a liver biopsy in May 2002 showed that plaintiff had grade 1 chronic hepatitis C with mild activity and no significant fibrosis in his liver.   Kusumi did not treat plaintiff's hepatitis C in September 2002 because plaintiff began experiencing syncope.   Additionally, in October 2002, plaintiff's physicians determined that he had a thyroid disorder, a condition that could be exacerbated by hepatitis C treatment.   On December 30, 2003, Romeo noted that plaintiff's liver enzymes were normal and that his liver biopsy showed only mild activity and no fibrosis.   Given these findings, Romeo did not recommend treating plaintiff's hepatitis.   Accordingly, the administrative law judge did not err by failing to adopt Kusumi's speculative statement as evidence that plaintiff is unable to work.

3.  Credibility determination

Plaintiff asserts that the administrative law judge failed to mention and improperly rejected his reports regarding the nature and severity of his fatigue.   Under Social Security Ruling 96-7p, an administrative law judge must follow a two-step process in evaluating an individual's own description of his or her impairments:   1) determine

18

whether an "underlying medically determinable physical or mental impairment" could reasonably be expected to produce the individual's pain or other symptoms; and 2) if such a determination is made, evaluate the "intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities."  Social Security Ruling 96-7p, 1996 WL 374186, *1 (1996); see also Scheck, 357 F.3d at 702.  When conducting this evaluation, the administrative law judge may not reject the claimant's statements regarding his symptoms solely on the ground that the statements are not substantiated by objective medical evidence.  Instead, the administrative law judge must consider the entire case record to determine whether the individual's statements are credible.  Relevant factors the administrative law judge must evaluate are the individual's daily activities; the location, duration, frequency and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; other treatment or measures taken for relief of pain; and any other factors concerning the individual's functional limitations and restrictions.  Social Security Ruling 96-7p; 20 C.F.R. § 404.1529(c).  See also Scheck, 357 F.3d at 703; Zurawski, 245 F.3d at 887.

An administrative law judge's credibility determination is given special deference because the administrative law judge is in the best position to see and hear the witness

19

and to determine credibility.  <u>Shramek v. Apfel</u>, 226 F.3d 809, 812 (7th Cir. 2000).  In general, an administrative law judge's credibility determination will be upheld unless it is "patently wrong."  <u>Prochaska v. Barnhart</u>, 454 F.3d 731, 738 (7th Cir. 2006); <u>Sims v. Barnhart</u>, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying.").  However, the administrative law judge still must build an accurate and logical bridge between the evidence and the result.  <u>Shramek</u>, 226 F.3d at 811.

As an initial matter, I am satisfied that the administrative law judge considered plaintiff's reports of disabling fatigue.  In his decision, the administrative law judge cited plaintiff's testimony about the symptoms that he experiences upon exertion and his alleged inability to work because he had no strength.  AR 23-24.  The administrative law judge also was present at the hearing and questioned plaintiff about the extent of his symptoms.

Although the administrative law judge considered plaintiff's subjective complaints, he found them to be disproportionate and less than credible.  The administrative law judge found that plaintiff's subjective complaints lacked a reasonable medical basis and were not supported by the record.  He noted that plaintiff's recent treatments involved only periodic and conservative measures that were not indicative of a total disability and did not result in disabling side effects.  As discussed in the previous section, these findings are well-founded.  The administrative law judge was entitled to view the lack of

20

medical evidence supporting plaintiff's subjective complaints of severe fatigue as a factor probative of his credibility.   Powers v. Apfel, 207 F.3d 431, 435-36 (7th Cir. 2000) (upholding administrative law judge's determination in fibromyalgia case that plaintiff's credibility was undermined by discrepancy between degree of pain claimed and that suggested by medical evidence).

In accordance with SSR 96-7p, the administrative law judge also considered plaintiff's testimony regarding his daily activities and the lack of side effects from his medications.  Plaintiff testified that he was able to care for his personal needs; perform the basic household chores of cooking, washing dishes, vacuuming, shopping and making beds; visit and drink beer with his friends; and enjoy watching television, reading, fishing, camping and walking for exercise.  The record also shows that plaintiff was climbing a ladder in August 2003.  Although minimal or sporadic activities alone can not support a finding of non-disability, it was reasonable for the administrative law judge to conclude that fishing, camping and household chores indicated plaintiff's ability to perform sedentary work with certain limitations.  Scott v. Sullivan, 898 F.2d 519, 524 (7th Cir. 1990) (claimant's testimony that he could help out around the house, carry groceries, set the table, ride a bike, and go hunting and fishing supported adjudicator's finding that claimant was not limited to sedentary work).

Additionally, the administrative law judge noted throughout his decision that plaintiff minimized the amount of alcohol he drank.  At the hearing, plaintiff testified

that he stopped abusing alcohol after 1998 and that he currently drinks very little. However, he later testified that his friends bring him alcohol one or two times a week and he drinks three or four beers at a time.   Further, the record shows Kusumi considered plaintiff's alcohol use a problem for his hepatitis C in 2003.   Plaintiff also told Romeo in January 2004 that he only drank one beer a year.   However, only a month later, plaintiff's sister (the wife of Dr. Santanello) reported during an evaluation of plaintiff at Samaritan Behavioral Health that plaintiff continued to drink alcohol to an excess. Plaintiff denied this, claiming he only had a past history of drug and alcohol abuse.   AR 434, 436, 439 and 433.   The administrative law judge could reasonably infer from plaintiff's conflicting statements regarding his alcohol use that he was not entirely credible.

In sum, plaintiff has not demonstrated that this is one of those rare occasions on which the court should disturb the administrative law judge's credibility finding.   The administrative law judge stated good reasons for concluding that plaintiff's testimony was not entirely credible.   His conclusion is well-founded and supported by substantial evidence.   Although a different fact finder might have reached a different conclusion, this possibility is not a basis for setting aside the administrative law judge's credibility determination.   Prochaska, 454 F.3d at 738 (citation omitted); Sims, 442 F.3d at 538.

22

ORDER

IT IS ORDERED that the decision of defendant Michael Astrue, Commissioner of

Social Security, is AFFIRMED and plaintiff Patrick Murray's appeal is DISMISSED.

The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 28th day of April, 2008.


BY THE COURT:


/s/

_____

BARBARA B. CRABB
District Judge

23